UNITED STATES *v.* P. C. KUYPER & Co., INC. (No. 3166)[1]

[1] T. D. 43471.

United States Court of Customs and Patent Appeals, June 13, 1929

*Charles D. Lawrence*, Assistant Attorney General (*John F. Kavanagh*, special attorney, of counsel), for the United States.

*Allan R. Brown* for appellee.

[Oral argument May 6, 1929, by Mr. Kavanagh and Mr. Brown]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, and GARRETT, Associate Judges [1]

GARRETT, Judge, delivered the opinion of the court:

The merchandise concerning which the litigation involved in this case arose consists of knitting machines manufactured in Germany and imported by appellee. Sixteen entries are involved, three of them being importations made in 1925 and the remainder in 1927. They were assessed for duty under paragraph 372 of the Tariff Act of 1922 at 40 per centum ad valorem.

It is stipulated by attorneys for appellant and appellee that the application for review of the appraisement No. 77020–A shall be considered as representative of the applications for review in all of the other 15 cases. The court will, therefore, confine its consideration practically to this number and the decision as to it will be the decision as to the others.

Entry and appraisement were made upon the basis of foreign value, under paragraph 1 of section 402 (a). This is agreed to have been the legally correct valuation basis for the articles in question, and the issue presented is primarily one of fact as to whether the correct foreign value was arrived at under the law. In the case of this particular importation under consideration (77020–A), the invoice price seems to have been $3,516.40 plus a 1½ per centum German consumption or sales tax, making a total of $3,569, which appellee insists is the proper value upon which duty should be assessed. The importer, however, "in order to meet advances by the appraiser in foreign market value in similar cases then pending on appeal for reappraisement," added to the invoice price above given the sum of $573, thus making a total of $4,142 fixed by the appraiser as the dutiable or foreign market value. This addition was made under duress, under section 489, and the importer appealed under section 501 from the appraisement by the local appraiser to a reappraisement by an associate justice of the Customs Court. Mr. Chief Justice Fischer, before whom the testimony was taken, rendered a decision finding the dutiable value of the merchandise to be the invoice

---

[1] LENROOT, Judge, did not participate in this decision, the case having been argued before he took his seat.

values, and upon application for review of this decision before the first division of the Customs Court, Mr. Justice Brown, speaking for the court, affirmed the decision of Mr. Chief Justice Fischer.

The Government has appealed to this court and assigns numerous allegations of error.

The contention of the Government's counsel in the case is that the effect of the decision of the United States Customs Court is to grant the importer two discounts of 15 per centum each, thus approximating 30 per centum discount from the manufacturer's list prices in the home (German) market, whereas he was entitled (if to any discount at all) to only one 15 per centum. Appellee contests this contention, insisting that only one 15 per centum was allowed, and so the issue of fact is made up and presented.

We do not understand counsel for the Government seriously to insist that the importer was not entitled to have credited on the total dutiable value at least one discount of 15 per centum. This seems from the record to be clearly a proper allowance in arriving at the correct dutiable value in these cases, and the court so holds.

The real question presented is whether in some way a double discount has improperly been allowed.

Appellant contends that (1) the invoice values, as supplied to the importer by the manufacturer, were the manufacturer's list prices less 15 per centum at the time of the exportation; (2) the foreign value is no less than the manufacturer's list price, less 15 per centum, and hence the trial court erred in allowing 15 per centum to be deducted from the entered value, as the entered value had previously been arrived at by a deduction of 15 per centum from the manufacturer's list price.

In other words, we understand counsel for the Government to contend that in this case (77020–A) there was deducted in the invoice sent to the importer 15 per centum of the actual list price, which gave the price of $3,516.40 insisted upon by appellee as being the true dutiable value plus the 1½ per centum German consumption tax. The importer, on the other hand, insists that this 15 per centum had not been so deducted and that he was entitled to its deduction, in fixing the total value upon which he should be required to pay duty, and that, therefore, the $573 added to be entered under duress should be remitted.

Appellant insists that the importer has offered no proof that this 15 per centum was not deducted at the time of the making out of the invoice, which was the basis of the entry, by the manufacturer, as it (the Government) claims, and that the Government has proven the contrary by the admission of the manufacturer "on at least two separate occasions," to wit: (a) An admission to the special agent in Germany, and (b) in an alleged deposition of the manufacturer, Hilscher, purporting to have been taken in New York on April 28,

1926. The latter instrument is challenged by appellee as not being properly a part of the record and will be referred to later.

Appellant quotes from the testimony of Max Nydegger, witness for appellee, when he was asked by appellee's counsel where he obtained the figures used in making the duress addition so as to bring the amount up to what the examiner claimed was the home market (German) value, his reply being, "These figures are based on the report we have from the manufacturer, the way he would calculate a similar machine for home-market sale." The argument is then made that when the shippers supplied the importer with the "home-market price," they supplied the price at which the merchandise was sold in Germany, "which price necessarily included any deductions or adjustments." This is purely argumentative, and the statement of the witness is construed by counsel for appellee to uphold his contention with quite as much plausibility in argument as marks that of counsel for the Government. We do not think this reply of the witness is such proof of a fact as to call for or justify a reversal by this court of the findings of fact by the Customs Court.

We have examined with care the report of the special agent of the Government, made from Berlin, Germany, to the Secretary of the Treasury, under date of January 25, 1926, which includes the agent's preliminary cable sent January 23 in response to instructions wired him on January 12. Without attempting to review it, because in our opinion it is unnecessary, let it suffice to say that we find nothing therein stated as a fact which would justify this court holding that in these transactions it has been shown that the 15 per centum deductions were made from the list prices upon the invoices sent by the manufacturers to the importer.

The Customs Court is clothed by law with authority to adopt and promulgate its own rules of procedure. Acting under this authority, it has, as a part of its system of procedure, in rule 26, the following:

At the hearing of appeals to reappraisement affidavits and reports of special agents abroad and other United States officials discharging their duties in investigating market conditions shall be considered and accorded such credence and probative value as, in the opinion of the justice, the circumstances may justify, even though such reports may contain statements in the nature of hearsay or secondary evidence.

This rule was adopted by the Customs Court in accordance with that part of section 501 of the Tariff Act of 1922 which reads:

In finding such value (of the merchandise) affidavits of persons whose attendance can not reasonably be had, price lists, catalogues, reports, or depositions of consuls, special agents, collectors, appraisers, assistant appraisers, examiners, and other officers of the Government may be considered.

The rules of the Customs Court made in conformity with law are binding upon this court in cases appealed, in which such rules are involved and applicable.

In a matter so complicated as that of enforcing the customs laws it is necessary, frequently, to have evidence of the nature provided for in the statute and rule above quoted; but manifestly such evidence being in *ex parte* form should be carefully scrutinized and analyzed in determining what weight shall be given it, however honest and honorable the agents or Government officials may be. It is testimony not ordinarily admissible in courts, but made so in customs matters by public necessity. The court must determine its value as evidence. That the Customs Court does this always and did it in this case we have no doubt, and we find no reason to question the correctness of that court's findings in this regard.

As for the copy of an alleged deposition of the manufacturer, Hilscher, taken April 28, 1926, in which the Government claims an admission supporting its contention to have been made, we are of opinion that the Customs Court committed no error in excluding it from the record and disregarding it in the determination of the case. It comes into the record presented to this court by reason of the fact that during the examination of Mr. Max Nydegger as a witness in some case or cases pending in 1926, which are not involved with those at bar, it was sought to be offered by counsel for appellee in those cases (the Government was therein the appellee), and upon the sustaining of objections by appellant's counsel to its reception, Government's counsel had it marked "Exhibit A for identification." It is an unsigned, unverified, unproved document, purporting to be a copy of a deposition of the manufacturer and seller, Hilscher, taken under section 508 of the Tariff Act of 1922.

Said section 508 reads as follows:

Collectors, appraisers, general appraisers, and boards of general appraisers may cite to appear before them or any of them and to examine upon oath, which said officers or any of them are hereby authorized to administer, any owner, importer, consignee, agent, or other person upon any matter or thing which they, or any of them, may deem material respecting any imported merchandise then under consideration or previously imported within one year, in ascertaining the classification or the value thereof or the rate or amount of duty; and they, or any of them, may require the production of any letters, accounts, contracts, invoices, or other documents relating to said merchandise, and may require such testimony to be reduced to writing, and when so taken it shall be filed and preserved, under such rules as the Board of General Appraisers may prescribe, and such evidence may be given consideration in all subsequent proceedings relating to such merchandise.

It will be observed from an analysis of the above that the use of such anticipatory evidence seems to be confined to proceedings "relating to such merchandise." This would seem to confine its use strictly to the shipments or entries under consideration in the case or cases in which such evidence is taken, but we do not deem it necessary specifically to construe the section in this case nor to determine whether the original would have been admissible in this case.

It was not offered. That which was offered was what was claimed to be a copy. There was no effort to prove or verify it except such as was contained in a few questions asked Nydegger, who seems to have acted as interpreter at the time of the alleged taking of the original.

The court could not consider as evidence a document purporting to be a copy without that copy being proven in proper manner to be what it is claimed to be, and there was no error in the proceedings below whereby it was rejected.

It is not improper to say that an examination of the rejected matter discloses that even if admitted it would not have convinced this court that there was error in the findings of fact by the court below, upon this phase of the controversy.

In arguing this case before this court counsel for the Government has presented a contention or theory which he stated at bar was not presented in the court below, because, as we understand it, the idea was not then in counsel's mind. This contention is that in converting the value of these machines, as expressed in marks, into United States currency value, the mark was treated as being worth only 20 cents, whereas its legal value, as declared by the Secretary of the Treasury under paragraphs (a) and (b) of section 522 of the Tariff Act of 1922, was 23.8 cents.

These paragraphs read as follows:

(a) That section 25 of the Act of August 27, 1894, entitled "An Act to reduce taxation, to provide revenue for the Government, and for other purposes," as amended, is reenacted without change as follows:

SEC. 25. That the value of foreign coin as expressed in the money of account of the United States shall be that of the pure metal of such coin of standard value; and the values of the standard coins in circulation of the various nations of the world shall be estimated quarterly by the Director of the Mint and be proclaimed by the Secretary of the Treasury quarterly on the 1st day of January, April, July, and October in each year.

(b) For the purpose of the assessment and collection of duties upon merchandise imported into the United States on or after the day of the enactment of this Act, wherever it is necessary to convert foreign currency into currency of the United States, such conversion, except as provided in subdivision (c), shall be made at the values proclaimed by the Secretary of the Treasury under the provisions of section 25 of such Act of August 27, 1894, as amended, for the quarter in which the merchandise was exported.

We have not found in the record anywhere a statement of the value or price of any one of these machines expressed in terms of marks. The invoices forwarded by the shipper to the importer give the prices in terms of United States currency—that is, dollars and cents. In the particular entry which we are considering (reappraisement 77020–A), the invoice price in dollars is given as $3,516.40. This, plus the 1½ per centum home (German) consumption tax of $52.60, making a total of $3,589, was found by the court below to have been the foreign value, and the manufacturer's list price, no discount having been made. Converted into marks, giving the mark its legal United

States value of 23.8 cents, this would make the list price (found by the court below to be the foreign value, which is agreed by the parties to be the correct value upon which to assess duty in these cases), expressed in terms of German currency, 14,995 marks.

In order to bring the sum total up to the amount which it was believed the local appraiser would hold the dutiable value to be, the importer withdrew the entry and added $573 under duress. Expressed in terms of German currency this addition (value of mark, 23.8 cents) amounted to 2,407 marks, thus making a total of 17,402 marks.

It appears from the yellow sheet, referred to in the briefs and argument of the case, which was attached to the invoice upon entry, that the importer understood 17,400 marks (of the value of 23.8 cents per mark) or $4,142 to be the local appraiser's idea of the correct entry or dutiable value of the merchandise involved in 77020–A, and he made the duress addition of $573 accordingly. Had the calculation been made upon the basis of a 20-cent mark value, the total amount, as will readily be seen, would have been 20,710 marks.

If there be deducted from the $4,142 entry 15 per centum thereof ($621.30) there will remain $3,520.70, or just $4.20 in excess of the $3,516.50 which appears as the price of the machine upon the invoice filed and used as the basis of the entry.

We are unable to find from the record in the case evidence of any material miscalculations made in the conversion of German currency prices into United States currency prices, and we think the court below was correct in holding the dutiable value to be as expressed by Justice Fischer:

Foreign value: Appraised value affirmed less additions made on entry under section 489 of the Tariff Act of 1922.

The judgment of the Customs Court is *affirmed*.